■ JEAN K. WATKINS et al., Respondents, v PETER D. CLARK et al., Appellants. [688 NYS2d 756] —Peters, J. Appeal from an order of the Supreme Court (Best, J.), entered June 15, 1998 in Montgomery County, which, *inter alia*, granted plaintiffs' motion to vacate a default judgment awarding summary judgment in favor of defendants.

In 1989, while bartending at a local restaurant, plaintiff Kenneth A. Watkins, III (hereinafter Watkins) was approached by two acquaintances, defendants Peter D. Clark and David Wilber, who asked if he would be interested in owning and operating a bar. Although Watkins was interested, he advised them that he had no experience with either the ownership or operation of a bar and had no financial backing. Notwithstanding his candor, the three later met and visited the site of the proposed restaurant and bar which was then owned by Clark and Wilber as co-stockholders in defendant Oneonta Plaza Annex, Inc. (hereinafter OPAI). Thereafter, Clark met with Watkins and his parents, plaintiffs Jean K. Watkins and Kenneth A. Watkins, Jr., to discuss this business venture. It is alleged that Clark informed Watkins and his parents that they would all work together and that their only monetary investment would be $25,000 coupled with their labor in renovating the premises. Ultimately, Watkins' parents agreed to provide the $25,000 in investment funds and renovate the premises to promote this new venture.

From January 1990 to the summer of 1990, Watkins and his family made numerous renovations and improvements to the premises as directed by Clark and Wilber at weekly meetings. Although Watkins had envisioned opening a simple bar and

grill, he ultimately adopted Clark's and Wilber's vision to open an upscale bar and restaurant. In September 1990, Watkins, represented by counsel, executed a lease with OPAI for the premises that he was renovating. He and his parents continued to renovate the now leased premises and, by February 1991, had used over $47,000 of his parents' life savings in furtherance of this venture.

Just before the new bar and restaurant opened in February 1991, OPAI purportedly "loaned" Watkins $20,000 to purchase certain items and complete improvements. It is further alleged that Watkins agreed to repay this "loan" by adding an extra $500 to the monthly rent. By March 1991, however, the business was in financial trouble. According to Watkins, Clark advised him to sign a UCC-1 form providing OPAI with a security interest in certain business equipment to protect it from outside creditors should the business difficulties continue.

As the financial problems worsened, Watkins listed the business for sale. Defendants John Gallucci and James O'Sullivan, owners of defendant J & J Ventures, Inc., expressed their interest to purchase the business in August 1991. Although Clark was initially against the sale, he agreed that if a $10,000 insurance policy against property damage was obtained from Gallucci and O'Sullivan, he and Wilber would approve it. After agreeing to procure the insurance and orally agreeing to a $68,000 purchase price, a meeting was held to finalize the purchase and sale agreement. At that meeting, the attorney representing Gallucci and O'Sullivan, who was also the attorney for Clark, Wilber and OPAI, informed Watkins that the purchase price was going to be reduced by $20,000 because of his outstanding debt to OPAI. Watkins maintained that no such debt was owed and he therefore rejected their reduced purchase offer. He did, however, sign a management agreement with Gallucci and O'Sullivan so that they could become familiar with the business until a purchase and sale agreement could be finalized.

In September 1991, unbeknownst to Watkins, OPAI entered into a lease agreement with Gallucci and O'Sullivan for the space that Watkins was leasing, conditioned on their obtaining a liquor license. Continuing to manage the bar and restaurant with Watkins' license, they applied for a liquor license by presenting the newly negotiated lease agreement with OPAI in which it was alleged that Watkins was in default. By the end of October 1991, Watkins, who had encountered numerous problems with Gallucci and O'Sullivan, unsuccessfully sought to terminate the management agreement and resume manage-

ment of the business. In November 1991, OPAI moved to retake the business, alleging Watkins' default on the rent, insurance and utility obligations. Watkins thereafter sought to regain possession of the premises from Gallucci and O'Sullivan who were the new owners of the leased premises.

This action was commenced in February 1993 alleging, *inter alia*, that Clark, Wilber and OPAI breached the agreement with Watkins with respect to the renovation costs and capitalization of the business, that OPAI breached the written lease agreement and that Clark, Wilber and OPAI converted Watkins' property. Defendants denied that they ever entered into such agreement to help renovate and capitalize the premises, contended, *inter alia*, that Watkins surrendered the leased premises by his default and argued that the Statute of Frauds barred several of plaintiffs' causes of action. A motion for summary judgment to dismiss the complaint was adjourned by the parties to November 3, 1997 and thereafter adjourned by Supreme Court to November 17, 1997.

Upon plaintiffs' failure to file answering papers or appear on November 17, 1997, Supreme Court granted defendants' summary judgment motion by default. Plaintiffs' counsel immediately moved, pursuant to CPLR 5015 (a) (1), to vacate the default order by alleging law office failure. Supreme Court granted plaintiffs' motion and, having so vacated such order, denied defendants' motion for summary judgment. Defendants now appeal.

Clearly, it became plaintiffs' burden in seeking the vacatur of the default judgment to demonstrate a reasonable excuse for the default and the existence of a meritorious defense (*see*, CPLR 5015 [a] [1]; *Cerrone v Fasulo*, 245 AD2d 793, 794). With a "preference that disputes be resolved on their merits" (*Fishman v Beach*, 246 AD2d 779, 780), we agree with Supreme Court that the proffer by plaintiffs' counsel explaining his misunderstanding of the adjourn date, coupled with his failure to enter it into his new computerized calendaring system, constitutes a reasonable excuse "especially in light of [his] swift action to cure" (*Action Lawn & Landscaping v East Glenville Fire Dist.*, 254 AD2d 585, 587). Further finding that plaintiffs made the requisite " 'prima facie showing of legal merit' " (*Dwyer v West Bradford Corp.*, 188 AD2d 813, 815, quoting *David Sanders, P. C. v Sanders Architects*, 140 AD2d 787, 789) by the proffer of their individualized affidavits, along with supporting documentary evidence, including the lease agreement between OPAI, Gallucci and O'Sullivan, we find that in the absence of any showing of prejudice the vacatur of the default was proper.

As to the denial of defendants' motion for summary judgment, we find no error. Since permeating issues of material fact remain with respect to, *inter alia*, whether defendants tried to unlawfully convert plaintiffs' property prior to a default on the lease, we agree that an award of summary judgment would be premature.

With respect to defendants' motion to dismiss plaintiffs' causes of action as barred by the Statute of Frauds, however, we agree that the cause of action alleging a breach of an oral sales contract to buy the business should have been dismissed pursuant to the principles of General Obligations Law § 5-703 (2).

Having considered the remaining contentions and rejecting them as without merit, we hereby modify Supreme Court's order by dismissing plaintiffs' sixth cause of action.

Cardona, P. J., Spain, Carpinello and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment with respect to plaintiffs' sixth cause of action; motion granted to that extent and said cause of action dismissed; and, as so modified, affirmed.